UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| FREDERICK SKODA, | Civil No. 10-CV-4865 (MJD/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| LILLY USA LLC, AKA ELI LILLY & CO., | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge upon the Motion of the Defendant, Lilly USA LLC ("Lilly"), to Dismiss Plaintiff's claims. A hearing on the Motion was conducted on March 9, 2011. The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1). For reasons outlined below, the Court recommends that the Plaintiff's Motion to Dismiss be GRANTED.

## I.   BACKGROUND

Plaintiff has filed three lawsuits, including this case, arising out of Plaintiff's former employment with the Defendant. On April 19, 2010, Plaintiff filed a complaint in Minnesota State Conciliation Court alleging that Defendant failed to pay his wages and prepaid vacation upon his discharge from employment. Plaintiff sought damages of $7,339. On June 10, 2010, Plaintiff sent the Defendant three letters demanding additional compensation in the form of earned incentive compensation payments. The hearing in conciliation court regarding the wages and prepaid vacation took place on July 8, 2010. On July 15, 2010, the Conciliation Court entered a judgment in favor of Plaintiff. Neither party appealed.

1

On August 17, 2010, Defendant paid the full amount of the July 15, 2010 conciliation court judgment to Plaintiff, except the Defendant withheld taxes from the total amount of lost wages. After receiving the checks, Plaintiff signed a Satisfaction of Judgment.

Thereafter, Plaintiff filed a second complaint in Minnesota State Conciliation Court alleging that Defendant should have increased the amount of Plaintiff's check from the first case so that after withholding taxes the net amount he received would equal the full value of the first judgment. The conciliation court entered judgment for the Defendant. Again, neither party appealed the decision.

On November 8, 2010, the Plaintiff filed the present case in Minnesota State District Court. The following facts form the basis of the Complaint now before the Court. The Defendant employed the Plaintiff as a Senior Sales Representative until March 24, 2010. (Compl. ¶ 1). In addition to a salary, Defendant compensated the Plaintiff by commission based upon quarterly sales of Effient (Prasugrel); Cialis (Tadalafil); and Core Value Metrics Commission. (Compl. ¶ 3). Plaintiff alleges that payments of $2,740.00 for Core Value Metrics, $950.00 for Cialis, and $4,500.00 for Effient were due and supposed to be paid to him on June 9, 2010. (Compl. ¶ 4). However, Defendant never paid Plaintiff the commission payments allegedly due. Plaintiff thus contends that Defendant violated Minn. Stat. § 181.13(a)(b) for failing to pay the commissions within 24 hours of demand. (Compl. ¶ 6). Minn. Stat. § 181.13 provides a 15 day penalty of $5,925 for Defendant's failure to pay along with a doubling of liability. (Compl. ¶ 7). As such, the Plaintiff requests $51,930 in commission payments allegedly owed to him. (Compl. ¶ 7). In addition, Plaintiff requests costs and attorneys' fees.

Subsequently, Defendant removed the present action to federal court on the basis of diversity jurisdiction alleging that more than $75,000 is in controversy because although the Plaintiff only seeks $51,930 in economic damages, he also seeks costs and attorneys fees which, if included, would bring the total amount in controversy to over $75,000.  (Notice of Removal [Docket No. 1], ¶¶ 5-7).  Thereafter, the Defendant also brought a motion to dismiss alleging that the Defendant's claim was barred by res judicata.

In his response to the Defendant's motion, the Plaintiff made a "counter motion to remand" the case to state court.

The Court will first consider the Plaintiff's arguments in favor of remand because if the Court finds that the case should be remanded, the motion to dismiss need not be reached by this Court.  Then, if necessary, the Court will proceed to consider the Defendant's motion to dismiss.

## II.     PLAINTIFF'S COUNTERMOTION FOR REMAND

### A.     Standard of Review

Federal courts are "courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  Federal courts enjoy jurisdiction for civil actions between citizens of different states where the matter in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332.  A claim may be removed to federal court "only if it could have been brought in federal court originally; thus, the diversity and amount in controversy requirements of 28 U.S.C. § 1332 must be met, or the claim must be based upon a federal question pursuant to 28 U.S.C. § 1331." Peters v. Union Pac. R.R. Co., 80 F.3d 257, 260 (8th Cir. 1996).  Jurisdiction is determined based upon "[t]he allegations of the complaint as set forth at the time the petition for removal was filed." Crosby v. Paul Hardeman, Inc., 414 F.2d 1, 3 (8th Cir.1969).  "Any doubts about the

propriety of removal are resolved in favor of remand." Ahmed v. GCA Prod. Servs, Inc., 249 F.R.D. 322, 324 (D. Minn. 2008).

Whether diversity jurisdiction exists must be assessed as of the time of removal. Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939); Crosby v. Paul Hardeman, Inc., 414 F.2d 1, 3 (8th Cir.1969). The party opposing remand, therefore, has the burden of proof to demonstrate that diversity jurisdiction exists. Trimble v. Asarco, Inc., 232 F.3d 946, 959 (8th Cir. 2000).

**B.     Discussion**

In Plaintiff's response to Defendant's motion to dismiss, he asserted for the first time a countermotion for remand. However, Plaintiff's countermotion does not conform to the Local Rules for the District of Minnesota. Local Rule 7.1(b) requires that a party bringing a dispositive motion obtain a date for the hearing before filing his motion, file a Notice of Hearing, and a Memorandum of Law in support of a motion. Here, Plaintiff has not complied with any of these requirements. Nonetheless, for the sake of completeness, the Court will proceed to consider Plaintiff's motion on the merits.

A federal court has jurisdiction over an action when there is complete diversity among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Whether remand is proper in the present case turns on whether the amount in controversy exceeds the $75,000 threshold.[1]

Here, the Plaintiff requests $51,930 in commission payments allegedly owed to him under Minn. Stat. § 181.13. (Compl. ¶ 7). In addition, Plaintiff requests attorneys' fees. Minn. Stat. § 181.171 authorizes the recovery of attorneys fees for violations of Minn. Stat. § 181.13. Since Plaintiff requests attorneys fees pursuant to a statute, attorneys fees are properly

---

[1] The Plaintiff conceded on the record at the hearing regarding this motion that there is complete diversity amongst the parties in this case.

considered when analyzing whether the amount in controversy has been reached. Rasmussen v. State Farm Mut. Auto. Ins. Co., 410 F.3d 1029, 1031 (8th Cir. 2005). In the present case, the Plaintiff's attorney asserts that to date he has only incurred $500 in attorneys fees, and thus the amount in controversy requirement for diversity jurisdiction has not been met. However, the measure is not the attorney fees incurred thus far, but rather the Court considers a reasonable estimate of attorney's fees that might accrue over the entire litigation process. See Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1340 (10th Cir. 1998).

The Plaintiff contends that even estimating the reasonable attorneys fees that may accrue in this case would not bring the total amount in controversy above $75,000.[2] According to the Plaintiff, incurring over $23,000 in fees, the amount necessary for Plaintiff's $51,930 claim to meet the amount in controversy requirement, would be unlikely considering the relatively straightforward underlying claim in the case now before the Court. However, the Court remains unpersuaded by the Plaintiff's arguments. Even though the Plaintiff views this case as relatively straightforward, the various procedural hurdles that the parties may encounter in seeing the case through pretrial to post-trial motions could make this case relatively time consuming. For instance, the Federal Rules of Civil Procedure will require the parties to prepare for and attend a

---

[2] The Plaintiff implied at the hearing regarding this motion that a Court granting damages under Minn. Stat. 181. 171 for a violation of Minn. Stat. 181.13 would disregard an award of attorneys. However, the Court finds no such suggestion within the text of the statute which in relevant part reads:

> **Subdivision 1. Civil action; damages.** A person may bring a civil action seeking redress for violations of . . . 181.13 . .. directly to district court. An employer who is found to have violated the above sections is liable to the aggrieved party for the civil penalties or damages provided for in the section violated. An employer who is found to have violated the above sections shall also be liable for compensatory damages and other appropriate relief including but not limited to injunctive relief.
>
> **Subd. 3. Attorney fees and costs.** In an action brought under subdivision 1, the court shall order an employer who is found to have committed a violation to pay to the aggrieved party reasonable costs, disbursements, witness fees, and attorney fees.

Minn. Stat. 181.171. Nothing in the statute suggests that a Plaintiff would not be awarded attorneys fees and damages for a violation of Minn. Stat. § 181.13.

pretrial conference, engage in discovery, possibly bring dispositive motions, prepare for and attend a settlement conference, prepare for trial, attend trial, and prepare any posttrial motions. All of these steps will reasonably require significant preparation time by the attorneys. Furthermore, assuming even a modest $150 hour rate, which the Court considers not unreasonable for an attorney practicing in Minnesota, the Plaintiff would only need to spend 160 hours on this case to reach $24,000 in attorneys fees. Considering that this case is an employment matter where the parties may very well also need to hire and prepare experts to testify at a deposition and trial, the Court finds it entirely reasonable that a diligent attorney could spend well over 160 hours litigating this case through trial and post trial proceedings .

Delsing v. Starbucks Coffee Corp., 2010 WL 1507642 (D. Minn. April. 14, 2010), supports the Defendant's argument that Plaintiff's request for attorneys fees brings his claim over the $75,000 amount in controversy requirement set by § 1332. In Delsing, the Court considered whether to remand a claim by the plaintiff asserting that the manner in which Starbucks distributed tips violated the law. 2010 WL 1507642 at *1. Even though the plaintiff in Delsing would likely only recover a few hundred dollars, the court noted that she would "have to do a lot of litigating to recover those few hundred dollars." Id. at *3. Moreover, the court stated that fee awards over $75,000 are common in employment matters litigated through trial. Id.; see also Maule v. Nicholson, 2006 WL 3758390 (D. Minn. Dec. 20, 2006) (awarding plaintiff $232,829.32 in employment discrimination and retaliation claims); Kidwell v. Sybaritic, Inc., 749 N.W.2d 855, 861 (Minn. Ct. App. 2008) (noting that $138,000 in fees following a whistle blower case is proper).

Even though the issues in Delsing were "novel and difficult questions of state law," the Court finds Delsing instructive to the instant case. Like Delsing, the Plaintiff's claim constitutes

an employment law matter, specifically how much in commission payments the Defendant allegedly owes the Plaintiff which could conceivably require expert testimony. Although the issues presented in Delsing may be more novel than the claims Plaintiff presents here, Plaintiff's underlying claim of $51,930 makes up a much larger proportion of the $75,000 amount in controversy necessary for diversity jurisdiction than the hundred of dollars that the plaintiff was seeking in Delsing.

For these reasons, the Court determines that the Defendant has demonstrated that the $75,000 amount in controversy has been met and recommends denying the Plaintiff's counter motion for remand.

## III. DEFENDANT'S MOTION TO DISMISS

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. When deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

On a motion to dismiss, the Court must "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Res judicata constitutes an issue of law that may be determined on a motion to dismiss. See e.g., In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir.2003) ("In an appropriate case, an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim."). However, "the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." Id.

In a diversity action, federal common law incorporates the res judicata rule of the forum state. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001). Under Minnesota state law, res judicata bars a plaintiff from bringing a claim if four requirements are satisfied: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter." Hauschildt v. Beckingham, 686 N.W.2d 829, 840 (Minn. 2004).

**B.    Discussion**

Both parties agree that in the instant case the same parties exist and that the conciliation court judgment constituted a final judgment on the merits. Thus, the only issues left in dispute are whether the two claims involve the same set of factual circumstances and whether the Plaintiff had a full and fair opportunity to litigate his claim. The Court considers both issues below

**1.    Same Factual Circumstances**

The test for determining whether two successive suits involve the same claims is to "inquire whether both actions arise from the 'same operative nucleus of facts,'" because a "change in theory cannot be used to avoid res judicata." Nitz v. Nitz, 456 N.W.2d 450, 451-52

(Minn. Ct. App. 1990). In addition, courts ask whether the same evidence will sustain both actions. <u>Fearing v. City of Lake St. Croix Beach</u>, 2006 WL 695548 at *5-6 (D. Minn. Mar. 17, 2006).

In the instant case, according to the Defendant, both claims arise from the same set of factual circumstances. Both involve Plaintiff's employment with the Defendant, both involve the end of the employment relationship, and both involve compensation which Plaintiff alleges he did not receive. Moreover, as the Defendant asserts, both claims were made under the same statute, Minn. Stat. § 181.13.

In response to Defendant's motion, Plaintiff essentially argues that wages and commissions are not the same. Plaintiff asserts that wages and commissions are legally distinct and considered separate by both law and the employment agreement between the parties. (Pl.'s Brief [Docket No. 22], p. 2). Moreover, Plaintiff contends that the facts required to prove each claim are separate and distinct because wages requires a showing of how many hours were worked while commissions require a showing of sales made. <u>Id</u>. In addition, Plaintiff argues that Minn. Stat. § 181.13 states that wages and commissions have to be paid when they are "earned" and commissions are not earned until they are due. <u>Id</u>. Plaintiff offers no case law in support of his position.

Plaintiff's arguments are not persuasive. For purposes of a res judicata analysis, it does not matter whether the claims are the same such that both claims are for wages or both are for commission payments as the Plaintiff asserts. Instead, courts examine whether the claims arise from the same underlying factual circumstances and whether the Defendant could have brought the second claim at the same time as the first. See <u>Sabbia v. Marshall Fields</u>, 2007 WL 671314 at *3 (D. Minn., Mar. 1, 2007)("A person who has a choice of more than one remedy for a given

9

wrong may not assert them serially, but must advance claims all at once when such claims arise out the same circumstances and share the same nucleus of common facts.")

Nor does Plaintiff's argument that different facts make up the analysis of wages and commissions convince the Court that res judicata should not apply. Courts look at whether both claims come from the "same operative nucleus of fact," not whether identical facts exist supporting both claims as the Defendant alleges. This requires looking at the common facts giving rise to the claims rather than differences between the claims. Here, while there may be some additional facts required for Plaintiff to obtain his compensation payments, the operative nucleus of facts consists of the employment relationship between Plaintiff and Defendant, their subsequent separation, and any payment owing following the separation.[3] The work done by the Plaintiff for the Defendant before he was discharged gives rise to the Plaintiff's claim and is used to determine Plaintiff's wages and commissions. The fact that some additional facts may be needed to support the commission claim does not preclude satisfying this element of the res judicata doctrine.

---

[3] Plaintiff's claim that Minn. Stat. § 181.11 contemplates separate actions for wages and commissions remains unconvincing. Plaintiff has not pointed to any specific section of the statute stating that wages and commissions constitute separate claims. Minn. Stat. § 181.11 states,

> When any such transitory employment as is described in section 181.10 which requires an employee to change the employee's place of abode while performing the service required by the employment is terminated, either by the completion of the work or by the discharge or quitting of the employee, the wages or earnings of such employee in such employment shall be paid within 24 hours and, if not then paid, the employer shall pay the employee's reasonable expenses of remaining in the camp or elsewhere away from home while awaiting the arrival of payment of wages or earnings and, if such wages or earnings are not paid within two business days after the termination of such employment for any cause, the employer shall, in addition, pay to the employee two times the average amount of the employee's daily earnings in such employment from the time of the termination of the employment until payment has been made in full.

It does not say anything about wages and commission being separate. In fact, it says the opposite because it states that "wages or earnings" must be paid within 24 hours. This means that wages and other compensation owed, such as commission, must be paid at that time. Furthermore, it is unclear why the Plaintiff relies on Minn. Stat. § 181.11 when he brings his claim under Minn. Stat. § 181.13.

Additionally, even the statute used as Plaintiff's basis to sue is the same for both causes of actions. While Plaintiff attempts to argue that the statute treats wages and commissions differently, his argument is not persuasive. Minn. Stat. § 181.13 itself refers to "wages or commissions" (emphasis added) which suggests that the statute treats the two interchangeably: either the employer pays the employee in wages or commissions or both. Each is "due and payable upon demand of the employee. If the employee's earned wages and commissions are not paid within 24 hours after demand, whether the employment was by the day, hour, week, month, or piece or by commissions, the employer is in default." Thus, the language of 181.13 actually treats wages and commissions exactly the same.

As to Plaintiff's argument that the commissions were not earned until they were due, while Plaintiff correctly states that Minn. Stat. § 181.13 provides that "earned wages and commissions" should be paid within 24 hours after their demand, he offers no legal authority as to why his commissions were not earned until June 10. Plaintiff points to the Defendant's internal exit procedure which reads "[a]ny incentive payment is made prior to the end of the financial quarter following the quarter that was worked, . . ." (Skoda Aff.) According to the Plaintiff, the next financial quarter was not until June 10.[4] However, just because Defendant was supposed to pay Plaintiff's commission on June 10th does not mean that was when they were earned, and Plaintiff offers no support for his interpretation of "earned." Instead, on the present record it as just as likely that the commission was been earned after the sale giving rise to commission was made, as opposed to, when Plaintiff was to be paid the commission.

---

[4] Plaintiff bases this assertion on Defendant's employee exit procedures which Plaintiff interpreted himself to mean payments would not be made until June 10th. However, no copy of the employee exit procedures has been provided to the Court. Nor has the Plaintiff provided any explanation as to why his subjective belief as to when the commission was due is controlling as to when the payments were "earned."

Furthermore, when Plaintiff earned his commission is actually irrelevant for the purposes of the present analysis. Instead, as discussed in more detail below, res judicata contemplates whether all of Plaintiff's claims could have been brought together at one time. In this case, Plaintiff's claims all arose from the same nucleus of operative facts and under the same statute. It would have made sense for a court to hear all the claims together in one action rather than forcing the Defendant to defend itself in two separate lawsuits. Moreover, the hearing regarding Plaintiff's conciliation court case was not until July 8, 2010, <u>after</u>, by Plaintiff's own account, the time he had allegedly "earned" his commission on June 10.[5] As such, as soon as Plaintiff learned about the potential commissions, which arose out of the same employment circumstances that gave rise to his then pending conciliation court case, he could have properly dismissed his conciliation court case and brought <u>all</u> his claims at one time in one action.

Therefore, the Court finds Plaintiff's claim in the present action arose from the same nucleus of operative factual circumstances as his prior conciliation court action.

### 2. Estopped Party had a Full and Fair Opportunity to Litigate

"This element of res judicata requires a full and fair <u>opportunity</u> to litigate a claim, not either <u>actual litigation</u> or <u>notice</u> of the consequences of litigation choices-that is, the standard seeks to assure that there was an opportunity to litigate. . ." <u>Otis v. Berge</u>, 2010 WL 5422401 at *5 (D. Minn. Nov. 15, 2010). "The question of whether a party had a full and fair opportunity to litigate a matter generally focuses on whether there were significant procedural limitations in the prior proceedings, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." <u>State v. Joseph</u>, 636 N.W.2d 322, 328 (Minn. 2001).

---

[5] In fact, as noted in the background above, the Plaintiff was aware of and made written demand on Defendant for his claimed commission on June 10, 2010.

12

Plaintiff's brief in support of his present motion does not make any arguments that he did not have a full and fair opportunity to litigate his first claim for wages in state court. However, at oral argument, Plaintiff argued that the procedures of conciliation court would not have allowed him to bring a second claim for commissions owed, and thus he contends he could not have litigated his two claims together.

Case law contradicts Plaintiff's argument. In <u>Mattsen v. Packman</u>, 358 N.W.2d 48 (Minn. 1984), the plaintiff was involved in a car accident with the Defendant. Plaintiff first brought his claim in conciliation court seeking payment for damages sustained to his car. After succeeding in conciliation court, the plaintiff commenced an action in state district court for personal injuries and property damages. "[D]espite the different kinds of damage which the plaintiff sustained," the court found that since the collision was a single event, the plaintiff should have brought all his claims in one suit. <u>Mattsen</u>, 358 N.W.2d at 49-50. The court declined to allow the plaintiff to split the claim even though the initial claim was brought in conciliation court which only allowed the plaintiff to recover a limited amount of damages.

The <u>Mattsen</u> court stated that,

> In essence, the plaintiff would have us split a single, indivisible claim or cause of action into two separate and distinct claims if some portion of the claim can be split off for assertion in conciliation court. Such a rule would accord each party involved in an automobile accident the right to bring two separate lawsuits: an action in conciliation court for property damage or some part of his property damage and another action in district court for personal injury. . . This is not to say that a party who is excusably ignorant of the effect of a judgment should have no remedy. Relief may be had for cause; the judgment may be re-opened through proceedings to vacate pursuant to Rule 60.02, Minn. R .Civ. P., or, when appropriate, by an independent action to set aside the judgment.

358 N.W.2d at 50. Additionally, in <u>Mattsen</u>, the Court found that even though the plaintiff stated that he did not seek his attorney's advice about commencing the conciliation court action, he had consulted an attorney months before initiating the action in conciliation court. <u>Id</u>. at 51.

Similar to Mattsen, the Plaintiff in the instant case attempts to bring two separate claims which, as discussed above, arise from the same nucleus of operative fact surrounding the end of his employment relationship with the Defendant and the compensation still owed to him. Furthermore, like in Mattsen, the Plaintiff could have brought his separate claims for wage and commission payments in one action. Here, as of April 19, the Plaintiff knew that the Defendant was not going to be paying his hourly wages as evinced by his complaint filed in conciliation court. (Schmidt Aff., Ex. A [Docket No. 7]). Then, on June 10, 2010, the Plaintiff sent letters to the Defendants demanding commission payments allegedly due.[6] (Schmidt Aff., Exs. B). Thus, as of June 10th, the Plaintiff knew that the Defendants owed him both hourly wage payments and commission payments. However, the conciliation court hearing on the Plaintiff's hourly wage claims was not until July 8, 2010. As such, the Plaintiff could have raised the issue of commissions at the trial regarding his wage claim. Based on the limited documents in the conciliation court record, it remains unclear whether the issue was or was not in fact raised at the conciliation court trial. In any event, the opportunity for the Plaintiff to raise the commission issue was fully present.

Even if the commission payments would have placed the total claimed damages over the conciliation court jurisdictional threshold, the Plaintiff could still have dismissed the conciliation court claim without prejudice and brought a single claim for the full amount in state district court. See Kern v. Janson, 2010 WL 3546867 at *4 (Minn. Ct. App. Sep. 14, 2010) (distinguishing case from other cases where res judicata did not apply because defendant in

---

[6] Even though motions to dismiss are generally decided by analyzing the face of the Complaint, documents referred to in the Complaint constitute part of the Complaint itself and can be considered by a court when deciding a motion to dismiss. Moses.com Securities, Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (citing Venture Assoc's Corp. v. Zenith Data Sys., 987 F.2d 429, 431 (7th Cir. 2003) (stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim")). Here, the Complaint refers to the June 10 letter sent by the Plaintiff. Thus, the Court considers the letters on the present motion to dismiss.

14

conciliation court did not have the ability to postpone bringing his claim at a later date because it was a counterclaim, and the Kern Court, therefore, applied res judicata because plaintiff had the ability to delay the entire action and bring all relevant claims at one time).[7]

Plaintiff also argued at the hearing regarding the present motion that it would be unfair to expect a Plaintiff proceeding without an attorney to know, especially in the context of a conciliation court proceeding where attorneys are generally not present, that separate claims arising from the same facts needed to be brought as one action in order to avoid the dismissal of later claims brought after judgment was entered on the previous claim. While the Court understands Plaintiff's concerns, the present case does not present the type of situation where it would be unfair to hold a pro se Plaintiff responsible for his failure to bring all his claims in one action. Mattsen, 358 N.W.2d at 50.

Here, like the Plaintiff in Mattsen, the present Plaintiff did in fact consult an attorney sometime before or during his action in conciliation court. Id. at 51; see also Kern, 2010 WL 3546867 at *4 (following rule in Mattsen to find that the plaintiff was not "excusably ignorant of the effect of bringing a conciliation court claim if he had contact with an attorney before bringing such a claim"). In his second conciliation court action seeking to change the amount of his first judgment to exclude taxes, Plaintiff asked the Court to award him $2,000 in attorneys fees. (Schmidt Aff., Ex. E). On the basis of the submissions before the present Court, Plaintiff's contact with or access to counsel is evident even if the details surrounding Plaintiff's consultation with an attorney remain unclear. However, at the very least, the request for attorneys' fees in the second conciliation court motion demonstrates that the Plaintiff appreciated

---

[7] In addition, rather than start a second lawsuit the Plaintiff could have sought to vacate the first conciliation court judgment under Minn. R. Civ. P. 60.02 as the Mattsen court suggests. See also Haukland v. Peterson, 396 N.W.2d 79 (Minn. Ct. App. 1986) (finding within court's discretion to vacate a satisfied conciliation court judgment under Minn. R. Civ. P. 60.02).

the need to consult with an attorney regarding his compensation claims.  Furthermore, in light of Plaintiff's demonstrated awareness of the availability to consult with counsel, it seems reasonable that the Plaintiff should have raised questions below about the different types of claims (both wages and commissions) he asserted he was entitled to as against the Defendant. Mattsen, 358 N.W.2d at 51 (determining that even though the plaintiff stated that he did not seek his attorney's advice regarding commencing an action in conciliation court, the fact that he had consulted his attorney was enough to allow the court to grant res judicata based on the conciliation court judgment).

The relevant analysis as to whether a claim is fully and fairly litigated is not whether the Plaintiff did or didn't litigate his claim completely in his initial lawsuit, but instead rather he had the <u>opportunity</u> to litigate his claims.  On the basis of the reasoning set forth above, the Court finds that in the present case, the Plaintiff did have the opportunity to litigate his claims seeking commission payments at the same time as he lititgated his claims seeking payment for hourly wages, and nothing precluded him from exercising those rights.

For these reasons, the Court finds that the Plaintiff's claims are barred by res judicata and recommends that the Court dismiss the Plaintiff's complaint.

## IV.   CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that

1. Defendant's Counter Motion for Remand [Docket No. 11] be **DENIED;**

2. Plaintiff's Motion to Dismiss [Docket No. 4] be **GRANTED.**


Dated: April 11, 2011                                                       s/Leo I. Brisbois
                                                                                         LEO I. BRISBOIS

United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by April 25, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.